IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLYDE MASON,** <br> Plaintiff, <br><br> v. <br><br> **BRANDYWINE CONSTRUCTION AND MANAGEMENT, INC.,** and **SOUTH BANK STREET PROPERTIES, L.P.,** <br> Defendants. | **CIVIL ACTION** <br><br><br><br> **NO. 15-6635** |

DuBois, J.                                                                                         March 27, 2017

**M E M O R A N D U M**

### I.    INTRODUCTION

This is a negligence case. Plaintiff Clyde Mason avers that he was injured when he fell on an icy sidewalk outside his apartment building in Philadelphia, Pennsylvania.[1] He claims that the icy condition was caused by the negligence of defendants Brandywine Construction and Management, Inc. ("Brandywine"), and South Bank Street Properties ("SBSP"). Presently before the Court is defendants' Motion for Summary Judgment ("Motion") (Document No. 20, filed Nov. 17, 2016).[2] For the reasons that follow, defendants' Motion is granted in part and denied in part.

### II.   BACKGROUND

The relevant facts as set forth in evidence submitted by the parties are as follows. In January 2015, Clyde Mason lived in an apartment building at 23 South 3rd Street, Philadelphia,

---

[1] At the time the Complaint was filed, plaintiff resided in New York state. Compl. at 1, ¶ 2.
[2] Defendants filed a Brief in Support of Defendants Brandywine Construction and Management, Inc. and South Bank Street Properties, L.P.'s Motion for Summary Judgment but did not file an actual Motion for Summary Judgment. Defendants' Brief states in the second paragraph that defendants "move now for the entry of summary judgment." The Court construes the Brief as a Motion for Summary Judgment.

1

Pennsylvania (the "apartment building") with his then-girlfriend Sukari Keetin.  Defs.' Statement of Facts ("SOF") ¶ 3; Mot. Ex. B ("Mason Dep.") 13:20-24, 14:1-18, 21:20-21; Stip. to Substitute South Bank Street Properties, L.P. as a Def. for Def. SR Partners ("Stipulation") at 1 (Document No. 12, filed May 10, 2016).  On January 18, 2015, at approximately 8:15 A.M., plaintiff and Keetin left the apartment building.  Mason Dep. 50:1-11.  Both plaintiff and Keetin testified that it was raining or lightly raining when they left the apartment building through the Bank Street entrance.  Mason Dep. 59:12-15; Mot. Ex. D ("Keetin Dep.") 16:17-21.  Plaintiff also characterized the precipitation as freezing rain.  Mason Dep. 77:17-78:2.  Meteorological records for the Philadelphia International Airport in southwest Philadelphia, approximately nine miles southwest of the apartment building, reported rain and freezing drizzle from 6:54 A.M. to 8:25 A.M., and freezing drizzle and freezing rain from 8:25 A.M. to 8:54 A.M. on January 18th. Mot. Ex. C, at 4; Pl.'s Resp. to Mot. Summ. J. ("Pl.'s Resp.") Ex. 10, at 3 (Document No. 21, filed Nov. 23, 2016).  Meteorological records from the Northeast Philadelphia Airport, approximately thirteen miles northeast of the apartment building, reported freezing rain from 7:21 A.M. to 8:08 A.M. and rain from 8:17 A.M. to 11:35 A.M.  Mot. Ex. C, at 9; Pl.'s Resp. Ex. 10, at 3.

     Plaintiff saw ice on the sidewalk when he stepped out of the apartment building at the Bank Street entrance and testified that the ground felt slippery underfoot.  Mason Dep. 63:13-64:1.  The street also looked icy to plaintiff.  Mason Dep. 70:19-24.  Plaintiff began to walk on the sidewalk on Bank Street and testified that Keetin walked next to him in the street.  Mason Dep. 68:6.  According to plaintiff, Keetin fell but was not injured shortly before plaintiff fell.  Mason Dep. 67:15-68:6, 70:6-8.  Plaintiff testified that he fell as he approached the corner of Bank Street and Elbow Lane.  Mason Dep. 72:14-19.  Plaintiff described his fall as follows: "My

right boot—so I slipped, my left leg and foot went up, my right boot stuck in the ice. . . . I heard bones break" and landed "[o]n my back." Mason Dep. 73:20-74:10. Plaintiff fractured his ankle in the fall. Mason Dep. 101:15-18.

When asked whether he saw ice on the sidewalk before he encountered it, plaintiff testified that "[t]here was ice everywhere." Mason Dep. 72:3-8. Plaintiff also testified that the ice on which he slipped had been on the sidewalk continuously from a storm the previous week and that he had observed the ice there daily. Mason Dep. 13:19-14:7, 15:15-20, 17:4-21, 83:1-84:22. The previous storm took place on January 12, 2015; 0.63 inches of precipitation fell in the Philadelphia area during that storm. SOF ¶ 5; Pl.'s Resp. to SOF ¶ 5 (Document No. 29, filed Dec. 14, 2016). There was no recorded precipitation in the Philadelphia area between January 13th and January 18th. *Id.*

Keetin testified that, as plaintiff lay on the ground, he was positioned under a downspout on the side of the apartment building and that water was flowing from the downspout. Keetin Dep. 18:1-8. Keetin explained that she saw what caused plaintiff's fall and that "[i]t was slippery. I saw some ice and there was also—the drainpipe had a lot of water rushing out of it." Keetin Dep. 46: 1-7. Before January 18th, Keetin had observed that the downspout created a puddle of the water on the sidewalk when it rained. Keetin Dep. 16:1-9. Plaintiff did not observe the downspout on the day of his fall. Mason Dep. 97:12-17. Before January 18th, plaintiff had noticed that the downspout was not feeding directly into the nearby drain, but had not observed any water draining from the downspout. Mason Dep. 98:9-99:4. A few weeks after his fall, plaintiff observed water flowing from the downspout onto the sidewalk and into the area in which he fell, "causing more ice than in other parts of the area." Mason Dep. 87:19-24, 96:20-97:17.

The apartment building was owned by defendant SBSP and managed by defendant Brandywine. Compl. ¶¶ 3-4; Am. Answer ¶¶ 3-4; Stipulation at 1. Brandywine provided the daily maintenance for the apartment building, which included, *inter alia*, snow and ice removal for the area in which plaintiff fell and the maintenance of exterior drains. Pl.'s Resp. Ex. 6, ("Stringer Dep.") 38:11-16; 101:12-102-16. As part of the snow and ice removal process, Charles Stringer, Brandywine's regional maintenance supervisor, testified that Brandywine employees apply calcium to the sidewalks after clearing snow or ice but do not apply any calcium or salt prior to a snow or ice storm. Stringer Dep. 72:11-24, 73:13-24. According to Brandywine's payroll detail for January 1st to January 18th, a Brandywine employee was on the property each day from January 12th to January 16th, but not on January 17th or January 18th. Pl.'s Resp. Ex. 10, at 2. On January 12th, Brandywine employee Charles Heston spent thirty minutes on "Snow Removal" at the apartment building property, and the "Comments" section for that entry states "Spread calcium on sidewalk/courtyard." *Id.* There is no evidence of snow or ice removal on January 18th.

Stringer explained that, after snow or ice removal, he generally "[went] past all the [Old City] properties [managed by Brandywine] once the day was done" to ensure that the snow and ice removal had been done. Stringer Dep. 76:17-77:15. There is no written documentation of those inspections. Stringer Dep. 35:8-11, 35:24-36:15. Bruce Fulmer, Brandywine's senior property manager, testified that he would also inspect the property after snow removal was completed, but there is no written documentation of those inspections. Pl.'s Resp. Ex. 7 ("Fulmer Dep.") 25:2-23. There is no evidence that the apartment building property was inspected by Stringer or Fulmer on January 12th or January 18th.

At some point in the winter of 2014-2015, Stringer was aware that a "pipe" located near

Bank Street and Elbow Lane was not directing water into a drain.  Stringer Dep. 96:8-97:4.  Stringer testified that a section of that pipe was replaced by a Brandywine employee.  Stringer Dep. 97:9-23.  There is no other evidence of when this pipe was replaced.  The only reference to a downspout or pipe in the Brandywine payroll detail provided to the Court is an entry stating that Brandywine employee Heston spent thirty minutes on "Maintenance" at the apartment building property on January 12th.  Pl.'s Resp. Ex. 10, at 2.  The "Comments" section for that entry states "Reattach elbow to downspout."  *Id.*  There is no evidence of the location of that downspout.

According to plaintiff's expert, John Allin, defendants failed to meet commercial property maintenance standards and Philadelphia Code requirements when they "failed to effectively clear the subject sidewalk area at the [apartment building] of ice."  Pl.'s Resp. Ex. 10, at 9, 19.  In pertinent part, Chapter 10, § 10-720 of The Philadelphia Code states that "[t]he owner, agent and tenants of any building or premises shall clear a path of not less than 36 inches in width on all sidewalks abutting the building or premises within 6 hours after the snow has ceased to fall.  The path shall be thoroughly cleared of snow and ice."  Allin also opined that defendants failed to meet commercial property maintenance standards when they "failed to properly use salt or other appropriate deicing . . . materials" prior to the onset of a snow or ice event, and that defendants should have "utilized pretreatment options," including "pretreat[ing] the sidewalks with appropriate deicing material in advance of the freezing drizzle" on January 18th.  Pl.'s Resp. Ex. 10, at 9, 19.

### III.   APPLICABLE LAW

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the party opposing summary judgment must identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

To establish negligence under Pennsylvania law, a plaintiff must prove four elements: (1) the defendant owed "a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks," (2) the defendant failed to conform to that standard, (3) "a causal connection between the conduct and the resulting injury," and (4) "actual loss or damage" to the plaintiff. *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005).

**IV.    DISCUSSION**

In their Motion for Summary Judgment, defendants make three arguments: (1) that Pennsylvania's "hills and ridges" doctrine applies and precludes recovery; (2) even if the hills and ridges doctrine does not apply, plaintiff has not produced evidence that defendants had actual or constructive notice of the icy condition; and (3) defendants did not have a duty to

pretreat the sidewalk with de-icing material prior to the freezing rain on January 18th. The Court addresses each argument in turn.

### A. Pennsylvania's Hills and Ridges Doctrine

Under Pennsylvania law, property owners are not required to keep the sidewalks abutting their property constantly free from snow and ice. *Beck v. Holly Tree Homeowners Ass'n*, 689 F. Supp. 2d 756, 762 (E.D. Pa. Mar. 1, 2010) (citation omitted). Rather, land owners and occupiers are shielded from liability for "generally slippery conditions resulting from ice and snow" provided that the land owner or occupier "has not permitted ice and snow to unreasonably accumulate in ridges or elevations that remain for an unreasonable amount of time." *Id.* (quotation marks omitted) (citing *Tameru v. W-Franklin, L.P.*, Civil Action No. 07-1965, 2008 WL 4272637, at *3 (E.D. Pa. Sept. 11, 2008)). To sustain a claim of negligence under this "hills and ridges" doctrine, a plaintiff must show

> (1) that snow and ice has accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; and (3) that it was the dangerous accumulation of snow and ice which caused plaintiff to fall.

*Rinaldi v. Levine*, 176 A.2d 623, 625-26 (Pa. 1962).

Two main exceptions to the hills and ridges doctrine exist. First, the doctrine does not apply "when conditions in the community are not generally slippery and when there is a localized, isolated patch of ice on that premises on which an individual slips." *Jung v. Marriott Hotel Serv., Inc.*, Civil Action No. 09-4955, 2010 WL 4703543, at *2 (E.D. Pa. Nov. 19, 2010) (citation omitted). Second, the doctrine does not apply "when an icy condition is caused by the defendant's neglect." *Id.* (citation omitted).

Defendants argue that the hills and ridges doctrine precludes recovery for plaintiff

7

because there is no evidence that snow or ice had accumulated to dangerous elevations and neither exception to the hills and ridges doctrine applies. Mot. 8-10. Plaintiff argues that both exceptions to the hills and ridges doctrine apply. Pl.'s Resp. 13-14. Because there is evidence that the icy condition was caused at least in part by defendants' neglect, the Court concludes that the hills and ridges doctrine is inapplicable based on the second exception to the doctrine.

Defendants argue that the second exception to the doctrine is inapplicable because the downspout could not have contributed to the ice on the sidewalk—by definition, freezing rain freezes to surfaces on contact, and thus could not accumulate on the sidewalk by flowing through the downspout. Mot. 10. In response, plaintiff argues that his fall was caused by defendants' failure to properly clear the sidewalk after January 12th and, with respect to the downspout, that Keetin testified that water was flowing from the downspout that morning. Pl.'s Resp. 12-13.

The Court concludes that there exists a genuine dispute of material fact as to whether the icy condition was caused by defendants' neglect. Plaintiff testified that he slipped on ice that had been present on the sidewalk since the storm on January 12th. Mason Dep. 13:19-14:7, 15:15-20, 17:4-21, 83:1-84:22. Plaintiff has presented evidence that defendants were required to adequately clear the sidewalk of ice within six hours of the end of the storm. Pl.'s Resp. Ex. 10, at 9, 19. While there is evidence that defendants treated the sidewalk near the building with calcium on January 12th, Pl.'s Resp. Ex. 10, at 2, plaintiff testified that he observed the ice on that area of the sidewalk every day thereafter. Mason Dep. 83:1-84:22. There is also evidence that it was raining, that water was flowing from the downspout and onto the area of the sidewalk where plaintiff slipped, Keetin Dep. 18:1-8, 46:1-7, and that defendants were responsible for and did perform maintenance for the external downspouts and drains. Stringer Dep. 38:11-16, 101:12-102-16; Pl.'s Resp. Ex. 10, at 2. Thus, a reasonable jury could find that plaintiff's fall

was caused, at least in part, by ice from the storm on January 12th that defendants failed to properly clear and/or the water flowing onto the sidewalk from a defective downspout. *See Bacsick v. Barnes*, 341 A.2d 157, 160 (Pa. Super. 1975) (holding that the hills and ridges doctrine may only be applied "in cases where the snow and ice complained of were the result of entirely natural accumulation following a recent snowfall"); *see also Harvey v. Rouse Chamberlain, LTD*, 901 A.2d 523, 526-27 (Pa. Super. 2006) (relying on *Bacsick* and concluding hills and ridges doctrine did not apply because black ice was caused in part by defendants' plowing and salting).

Because the Court concludes that the hills and ridges doctrine is inapplicable based on the second exception to the doctrine—neglect of the defendant—the Court does not address whether the first exception to the doctrine applies nor whether plaintiff's claims would survive if the hills and ridges doctrine applied to this case.

### B. No Actual or Constructive Notice of a Dangerous Condition

If the hills and ridges doctrine is inapplicable, a premise owner's liability is analyzed under ordinary negligence principles. *Beck*, 689 F. Supp. 2d at 767. Defendants do not dispute that plaintiff was defendant SBSP's tenant or that defendant Brandywine owed plaintiff the same duty of care as defendant SBSP. Under Pennsylvania law, "[a] tenant seeking to recover damages stemming from the condition of a rental property may pursue claims sounding in ordinary negligence or a breach of the implied warranty of a habitability." *Echeverria v. Holley*, 142 A.3d 29, 34 (Pa. Super. 2016).[3] A tenant-plaintiff proceeding under a negligence theory must show that the dangerous condition was "discoverable through the exercise of reasonable

---

[3] Plaintiff does not assert a claim of breach of an implied warranty of habitability and there is no evidence that plaintiff "gave notice to the landlord of the defect or condition," a required element under a theory of a breach of the implied warranty of habitability. *Echeverria,* 142 A.3d at 34. Therefore, plaintiff must proceed under a negligence theory.

diligence" and that the harm suffered was caused by the landlord's breach of a duty owed to the tenant—in other words, the plaintiff must show the ordinary negligence elements of duty, breach, causation and harm. *Id.* at 35 (citing *Keck v. Doughman*, 572 A.2d 724, 727 (Pa. Super. 1990). Under Pennsylvania law, "a landlord of a multi-tenanted building, reserving control of the common approaches, such as sidewalks, . . . is bound to keep such approaches and parts reasonably safe for the use of tenants" and is liable if he or she has either actual notice of a defective condition or "is chargeable with constructive notice because had [the landlord] exercised reasonable inspection he would have become aware" of the defective condition. *Felton v. Spratley*, 640 A.2d 1358, 1361 (Pa. Super. 1994) (quoting *Lopez v. Gukenback*, 137 A.2d 771, 774-75 (Pa. 1958)).[4]

In their Motion, defendants argue that plaintiff has failed to produce evidence that they had actual or constructive notice that the downspout on the property did not feed directly into the drain or evidence that the downspout created the ice on which plaintiff slipped. Mot. 12. Plaintiff advances three arguments in response: (1) defendants had actual notice of the snow and ice because defendant Brandywine's Regional Manager was on the property sometime between January 17th and January 24th; (2) the maintenance records show that defendants had actual notice of the defective downspout; and (3) defendants had constructive notice of the dangerous conditions because plaintiff fell on ice that had accumulated on January 12th, approximately a week before plaintiff fell. Pl.'s Resp. 14, Pl.'s Sur-Reply Ex. 15, 16 (Document No. 28, filed Dec. 14, 2016). The Court addresses each of plaintiff's arguments in turn.

---

[4] Plaintiff argues that he has asserted a claim of negligence under § 323 of the Restatement (Second) of Torts which describes the duty of one who undertakes to render necessary services to another. Pl.'s Resp. 16-17. However, Pennsylvania law specifically articulates a duty from landlord to tenant with respect to common areas such as sidewalks. *See Bleam v. Gateway Prof'l Ctr. Ass'n*, 636 A.2d 172, 174 (Pa. Super. 1993) (finding application of general duty erroneous where more specific duty was applicable).

The Court rejects plaintiff's first argument with respect to actual notice. The fact that Brandywine's regional maintenance manager was on the property at some point between January 17th and January 24th, without more, is insufficient to establish actual notice because it does not show or permit a reasonable inference that defendants' employee was aware of the condition *prior to* plaintiff's fall on January 18th.

The Court also rejects plaintiff's second argument with respect to actual notice. Plaintiff argues that defendants had actual notice of the defective condition because there were repair requests placed in November 2014 with respect to a "circular drain" in the courtyard and that Brandywine employee Heston "repaired" a downspout on January 12th. Pl.'s Sur-Reply Ex. 15, 16. Defendants argue that the "circular drain" in the courtyard in the November work orders cannot be the downspout at issue on the corner of Banks Street and Elbow Lane. Defs.' Resp. to Pl.'s Sur-Reply 1 (Document No. 31, filed Dec. 23, 2016). The Court agrees with defendants on this issue. This evidence does not show actual notice, or support an inference that defendants had actual notice, that the downspout was defective. There is no evidence that the circular drain in the courtyard and the downspout at issue are the same device. Additionally, without more, the evidence that Brandywine employee "[r]eattached elbow to downspout," Pl.'s Resp. Ex. 10, at 2, does not show actual notice or permit a reasonable inference that defendants were aware that the downspout was in a defective condition on January 18th.

With respect to plaintiff's third argument, the Court concludes that a reasonable jury could find that, had defendants exercised reasonable diligence, they would have been aware of the presence of the ice on the sidewalk in the area in which plaintiff fell. The Philadelphia Code required defendants to thoroughly remove ice from the sidewalk abutting the building and plaintiff's expert opined that defendants failed to meet industry standards for ice removal. Phila.,

Pa., Code ch. 10, § 10-720; Pl.'s Resp. Ex. 10, at 19.  There is evidence that defendants became aware of the icy conditions on January 12th, based on Brandywine's payroll detail which states that employee Heston spread calcium on the sidewalks on that date.  Pl.'s Resp. Ex. 10, at 2.  However, plaintiff testified that he slipped on ice that remained on the sidewalk from the storm on January 12th, and that he observed that there was ice in this area daily until the day of his accident.  Mason Dep. 13:19-14:7, 15:15-20, 17:4-21, 83:1-84:22.  With respect to constructive notice, this evidence presents a triable issue—whether defendants should have observed the icy condition of the sidewalk in the course of reasonable inspection.  This evidence also creates triable issues of fact with respect to whether defendants properly removed the ice from the storm on January 12th and whether this ice remained on the sidewalk until January 18th and caused plaintiff's fall.

     Furthermore, plaintiff has provided sufficient evidence for a reasonable jury to conclude that defendants should have discovered that the downspout was directing water onto the sidewalk rather than into the drain, and that the water from the downspout contributed to plaintiff's fall.  Plaintiff testified that he observed that the downspout did not feed into the drain both before and after January 18th, Mason Dep. 98:9-99:4, and that, a few weeks after his fall, he observed water flowing from the downspout in this position onto the area of the sidewalk where he fell.  Mason Dep. 87:19-24, 96:20-97:17.  Keetin testified that, prior to January 18th, she had observed that water from the downspout created a puddle on the sidewalk when it rained, and, on January 18th, water was flowing from the downspout onto the area where plaintiff fell.  Keetin Dep. 16:1-9, 18:1-8. As stated above, there is evidence that defendants were responsible for the maintenance of external downspouts and that Brandywine employee Heston reattached the "elbow" of a downspout on January 12th.  Stringer Dep. 38:11-16, 101:12-102-16; Pl.'s Resp. Ex. 10, at 2.

From this evidence, a reasonable jury could find that, had defendants reasonably inspected the property, they would have discovered that the downspout at issue directed water onto the sidewalk rather than into the drain, and that the water flowing from the downspout contributed to plaintiff's fall.

### C. Defendants' Duty to Pretreat the Sidewalk

To the extent that plaintiff's negligence claim is premised on defendants' failure to pretreat the sidewalk prior to the rain and/or freezing rain on January 18th, Pl.'s Resp. 18, the Court concludes that plaintiff has not produced evidence from which a reasonable jury could find that defendants had a duty to do so. While plaintiff's expert states that defendants should have "utilized pretreatment options," including "pretreat[ing] the sidewalks with appropriate deicing material in advance of the freezing drizzle" on January 18th, there is no evidence that defendants had a duty to pretreat the sidewalk in advance of freezing rain that was not forecasted or anticipated. Pl.'s Resp. Ex. 10, at 9, 19. The parties agree that the National Weather Service zone forecasts from the afternoon of January 17th to 6:30 A.M. on January 18th did not predict snow or freezing rain in the Philadelphia area for the morning of January 18th. SOF ¶ 6; Pl.'s Resp. to SOF ¶ 6. Plaintiff presents no evidence that defendants could have anticipated the freezing rain on January 18th and applied the appropriate deicing material prior to the freezing rain. Therefore, the Court grants defendants' Motion for Summary Judgment to the extent that plaintiff's negligence claim is based on defendants' failure to pre-treat the sidewalk on January 18th.

### V. CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment is granted in part and denied in part. The Motion is granted as to plaintiff's negligence claim based on defendants'

failure to pre-treat the sidewalk prior to the rain and/or freezing rain on January 18, 2015.  The Motion is denied in all other respects.  An appropriate order follows.